UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROBERT CHAMBERS,                  )
                                 )
        Plaintiff,           )
                                 )
        v.                    )        No. 4:19CV1183 JCH
                                 )
I.C. SYSTEM, INC.,           )
                                 )
        Defendant.      )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Robert Chambers' Motion for Summary Judgment, and Defendant I.C. System, Inc.'s Motion for Summary Judgment, both filed March 31, 2020. (ECF Nos. 28, 33). The motions are fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Robert Chambers, a resident of Jefferson County, Missouri, allegedly owes a debt arising from an Ameren Missouri utility account. (Petition (hereinafter "Complaint" or "Compl."), ¶¶ 4, 11). Defendant I.C. System, Inc. ("ICS" or "Defendant"), is in the business of collecting debts, and has its principal place of business in Minnesota. (*Id.*, ¶¶ 5, 8). Plaintiff claims Defendant is a "debt collector" as defined by the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (*Id.*, ¶¶ 8).

On or about January 11, 2019, Plaintiff received an initial debt collection letter from Defendant, on an Ameren debt in the amount of $818.93 (hereinafter the "January 11, 2019 letter", attached to Plaintiff's Motion for Summary Judgment as Exh. A). (Plaintiff's Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment ("Plaintiff's Facts"), ¶ 1). The January 11, 2019 letter stated: "Creditor: Ameren Missouri. Account No:

2855608163.  I.C. System Reference No:  166910415-1-79".  (*Id.*, ¶ 2).  It further included

language required to be disclosed in the initial communication by the FDCPA, 15 U.S.C. §

1692g, as follows:

> NOTICE—Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid.  If you notify us in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you make a request in writing within 30 days after receiving this notice we will provide you with the name and address of the original creditor, if different from the current creditor.

(*Id.*, ¶ 3).

On or about February 7, 2019, Plaintiff received a second debt collection letter from

Defendant, on an Ameren debt in the amount of $818.93 (hereinafter the "February 7, 2019

letter", attached to Plaintiff's Motion for Summary Judgment as Exh. B).  (Plaintiff's Facts, ¶ 4).

The February 7, 2019 letter stated:  "Creditor:  Ameren Missouri.  Account No:  2855608163.

I.C. System Reference No:  169281093-1-99", and included the same 30-day validation period

notice as the earlier letter.  (*Id.*, ¶¶ 5, 6).  According to Plaintiff, Defendant thus sent two debt

collection letters on the same $818.93 Ameren debt to Plaintiff within thirty days of each other,

each containing identical 30-day validation period notices required by the FDCPA.  (*Id.*, ¶ 7).[1]

The February 7, 2019 letter further stated as follows:

> The account information is scheduled to be reported to the national credit

---

[1] Defendant acknowledges that it sent two letters to Plaintiff regarding an Ameren obligation, but asserts the letters addressed two different ICS accounts, as they contained different ICS reference numbers.  (Defendant ICS's Response to Plaintiff's Statement of Uncontroverted Material Facts ("Defendant's Response to Plaintiff's Facts"), ¶ 7).  Defendant further asserts the Ameren Missouri account with ICS reference number 166910415-1-79 was recalled, and the debt was replaced with ICS reference number 169281093-1-99.  (Defendant ICS's Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment ("Defendant's Facts"), ¶ 5).

reporting agencies in your creditor's name.  You have the right to inspect your credit file in accordance with federal law.  I.C. System will not submit the account information to the national credit reporting agencies until the expiration of the time period described in the notice below.

(*Id.*, ¶ 8).

According to Plaintiff, he was confused upon receiving the February 7, 2019, letter, as he believed the letter stated the validation period would run thirty days from its first disclosure on January 11, 2019, and thus believed that Defendant would report the $818.93 Ameren debt to the national credit reporting agencies on February 11, 2019.  (Plaintiff's Facts, ¶¶ 9, 10).  Plaintiff therefore obtained a copy of his credit report from TransUnion on March 4, 2019, but the report showed no credit reporting of the Ameren debt by Defendant.  (*Id.*, ¶ 11).

On March 12, 2019, Plaintiff called Defendant and discovered Defendant did not plan to report the Ameren debt until April 6, 2019.  (Plaintiff's Facts, ¶ 12).[2]  According to Plaintiff, the ICS representative stated he could not discuss the Ameren debt because Defendant had another debt of Plaintiff's in its office, allegedly owed to Spectrum[3], and Defendant's company policy prevented the representative from discussing more than one debt at a time.  (*Id.*, ¶ 14).[4]  Plaintiff maintains Defendant's representative repeatedly requested payment on the Spectrum debt, and Plaintiff repeatedly refused to pay and informed the representative that he only wanted to discuss

---

[2] In fact, Defendant never reported the $818.93 Ameren debt to the national credit reporting agencies. (Plaintiff's Facts, ¶ 13).

[3] It is undisputed that when Plaintiff initially called ICS on March 12, 2019, he gave the representative the ICS reference number from the January 11, 2019, collection letter.  (*See* Defendant's Facts, ¶ 14 and Plaintiff's response thereto).  Defendant maintains the representative was unable to find the account because it had already been recalled. (Defendant's Facts, ¶ 15). The representative instead found the Spectrum account associated with Plaintiff's phone number. (*Id.*).

[4] Defendant responds the representative stated he could not discuss more than one *client* at a time.  (Defendant's Response to Plaintiff's Facts, ¶ 14).  Defendant further asserts ICS has a policy that representatives can only discuss clients to which they are assigned, and because the ICS representative on Plaintiff's first call was not assigned to Ameren, he could not discuss the account.  (*Id.*, ¶ 16; *see also* Defendant's Facts, ¶¶ 19-20).

the Ameren debt.  (*Id.*, ¶ 15).[5]  Plaintiff asserts he ended the first March 12, 2019, phone call, and then called Defendant back in an effort to determine when the alleged Ameren debt would be reported.  (Compl., ¶ 26).  Plaintiff alleges it was during this second phone call that Defendant stated the Ameren debt was eligible to be reported to the credit bureaus on April 6, 2019.  (*Id.*, ¶ 27).

On or about March 20, 2019, Plaintiff filed his Complaint in the Circuit Court of Jefferson County, Missouri.  (ECF No. 5).[6]  Plaintiff's Complaint purports to be "an action for statutory and actual damages brought by an individual consumer for violations of the Fair Debt Collections Practices Act, 15 USC 1692 *et Seq*. ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices."  (*Id.*, ¶ 1).  Plaintiff claims Defendant's collection activities caused him to incur actual damages including, but not limited to, stress, anxiety, sleeplessness and worry.  (*Id.*, ¶ 35).

As stated above, Plaintiff and Defendant filed competing Motions for Summary Judgment on March 31, 2020, each claiming there exist no disputed issues of material fact and it is entitled to judgment as a matter of law.  (ECF Nos. 28, 33).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[5] Defendant counters that Plaintiff never stated he refused to pay the Spectrum debt, but only attempted to steer the conversation to the Ameren debt.  (Defendant's Response to Plaintiff's Facts, ¶ 15).

[6] Defendant removed Plaintiff's Complaint to this Court on May 3, 2019, on the basis of federal question jurisdiction.  (ECF No. 1).

The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id.* at 249.

## DISCUSSION

"The FDCPA was designed to protect consumers from the 'abusive, deceptive and unfair debt collection practices' of debt collectors." *Worch v. Wolpoff & Abramson, L.L.P.*, 477 F.Supp.2d 1015, 1018 (E.D. Mo. 2007) (citing 15 U.S.C. § 1692 *et seq.*). "In order to establish a violation of the FDCPA, a plaintiff must demonstrate that 1) plaintiff has been the object of collection activity arising from a consumer debt; 2) the defendant attempting to collect the debt qualifies as a debt collector under the Act; and 3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *O'Connor v. Credit Protection Ass'n LP*, 2013 WL 5340927, at *6 (E.D. Mo. Sep. 23, 2013) (citations omitted); *see also*

*McHugh v. Valarity, LLC*, 2014 WL 6772469, at *2 (E.D. Mo. Dec. 1, 2014).  In the instant case, only the third element is at issue.  Plaintiff avers Defendant violated multiple provisions of the FDCPA, and the Court will address Plaintiff's contentions in turn.

      **I.**        **15 U.S.C. §§ 1692g and 1692e(10)**

As noted above, Defendant sent two debt collection letters to Plaintiff within thirty days, each containing identical 30-day validation period notices (as required by 15 U.S.C. § 1692g), and each stating the period began running upon receipt of the notice.  The letters contained different ICS reference numbers, and the second letter, dated February 7, 2019, contained the following language not found in the earlier letter:

> The account information is scheduled to be reported to the national credit reporting agencies in your creditor's name.  You have the right to inspect your credit file in accordance with federal law.  I.C. System will not submit the account information to the national credit reporting agencies until the expiration of the time period described in the notice below.

Plaintiff alleges he was confused upon receiving the second letter, as he believed the February 7, 2019, letter meant the validation period would run for 30 days from Defendant's first disclosure on January 11, 2019, and thus ICS would report the $818.93 Ameren debt to national credit reporting agencies on February 11, 2019.  Plaintiff thus maintains Defendant's sending of the second letter violated both § 1692g of the FDCPA, requiring effective disclosure of the thirty-day validation period, and § 1692e(10), prohibiting the use of any false representation or deceptive means in connection with an attempt to collect a debt.

15 U.S.C. § 1692g(a) requires that, within five days of the initial communication with a consumer in connection with the collection of any debt (unless the information is contained within the initial communication), a debt collector shall send the consumer a written notice containing:  "(1) the amount of the debt; (2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

"It is not enough for a debt collection agency simply to include the proper debt validation notice in a mailing to a consumer—Congress intended that such notice be clearly conveyed." *Owens v. Hellmuth & Johnson, PLLC*, 550 F.Supp.2d 1060, 1064 (D. Minn. 2008) (citations omitted). § 1692g(b) thus provides that although collection activities and communications may continue during the 30-day period absent a written dispute from the consumer, "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."  "This occurs when a debt-collection letter conveys information in a confusing or contradictory fashion so as to cloud the required message with uncertainty." *Owens*, 550 F.Supp.2d at 1064 (internal quotation marks and citations omitted).

"Whether collection activities or communications within the 30-day validation period overshadow or are inconsistent with a validation notice is determined under the 'unsophisticated consumer' standard."  *Glackin v. LTD Fin. Servs., L.P.*, No. 4:13CV717 CEJ, 2013 WL 3984520, at * 3 (E.D. Mo. Aug. 1, 2013) (internal quotation marks and citations omitted).  "[A]

debt collector violates the FDCPA if [the] communication would mislead or confuse an unsophisticated debtor." *Id.* (internal quotation marks and citation omitted).  An unsophisticated consumer may be "uninformed, naïve, and trusting, but still has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences."  *Id.* (internal quotation marks and citations omitted).  "The unsophisticated consumer is an individual with below average intelligence but not 'tied to the very last rung on the sophistication ladder.'" *Id.* (quoting *Duffy v. Landberg*, 215 F.3d 871, 874 (8th Cir. 2000)).  The standard also has an "objective element of reasonableness," to "protect debt collectors from liability for peculiar interpretations of collections letters."  *Duffy*, 215 F.3d at 874-75.[7]

"A communication following a dispute letter may be overshadowing if it (1) indicates that the time for disputing the debt has passed, (2) misrepresents or clouds the amount of time remaining to dispute the debt, or (3) contains overt misinformation, apparent contradiction, or a noticeable lack of clarity concerning the validation period or the debtor's rights under § 1692g." *Schuller*, 2016 WL 427961, at * 4 (citations omitted).  Upon consideration, the Court finds Defendant's second letter, following less than thirty days after the first, was overshadowing because it clouded the amount of time remaining to dispute the debt, and/or contained an apparent contradiction or noticeable lack of clarity concerning the validation period or Plaintiff's rights under 1692g.[8]  In so finding, the Court agrees with the reasoning of the district court in

---

[7] "The Eighth Circuit does not appear to have addressed whether the application of the unsophisticated consumer standard to an overshadowing claim presents a question of law or fact."  *Schuller v. AllianceOne Receivables, Mgmt., Inc.*, No. 4:15CV298 CDP, 2016 WL 427961, at * 6 n. 2 (E.D. Mo. Feb. 4, 2016).  In this case, however, both parties treat this as a question of law for the Court, and "[d]istrict courts within this circuit have generally held that the issue of overshadowing can be determined as a matter of law where the facts are undisputed." *See Id.* (collecting cases).  The Court will follow the same approach here.

[8] Defendant makes much of the fact that the two letters had different ICS reference numbers, and thus were unrelated.  While this may explain why Defendant sent the two letters, the Court finds

*Maloney v. Alliance Collection Agencies, Inc.*, No. 17-CV-1610, 2018 WL 5816375 (E.D. Wis.

Nov. 6, 2018), which held as follows:

> There is a real risk that [Defendant's] second notice could mislead an unsophisticated consumer into forfeiting her rights under the FDCPA. The unsophisticated consumer is likely not aware that she has a statutory right to dispute the debt within 30 days of the first notice, and that doing so will require the debt collector to cease collections activities while the verification is pending.  When she receives the initial notice, she simply understands that if she wants to dispute the debt she has to do so within 30 days.  When she receives the second notice, using identical language as the first to announce what is apparently a new validation period, she may reasonably assume that she has 30 days from that date to dispute the debt. Thus, a consumer who receives a second notice may reasonably wait until after the initial 30-day period to dispute the claim.  In doing so, she unknowingly forfeits the statutory right to dispute the debt and trigger the ceasing of collections activities required by the statute.

*Id.* at \*4.  The defendant in *Maloney* argued (as does Defendant here) that the second letter was

not false or misleading, because the plaintiffs did not allege defendant would fail to honor the

new 30-day validation period.  *Maloney*, 2018 WL 5816375, at \*4.  The Court agrees with the

*Maloney* court, however, that "[e]ven if [Defendant] would voluntarily honor the new 30-day

validation period, that would not be apparent to a consumer upon receipt of the letter.  In other

words, even if the notice were factually true, it could still confuse the consumer."  *Id.*[9]

Defendant cites several cases supporting the proposition that a second letter does not

violate the FDCPA, because it creates a new validation period.  Those cases are not from the

Eighth Circuit, however, and the Court declines to follow them here.  Instead, the Court agrees

with the District Court of the Northern District of Texas, which held as follows:

> The majority—and current trend—of courts confronted with the issue of

---

it likely would have gone unnoticed by an unsophisticated consumer, especially because the letters referenced the same Ameren account.

[9] Defendant here makes much of the fact that Plaintiff himself allegedly was not confused by the second letter.  As noted above, however, the unsophisticated consumer is an objective standard. *See Schuller*, 2016 WL 427961, at \*6 n. 3.

sequential letters agree that a debt collector does not violate the FDCPA by sending two debt collection letters with 30-day validation notices more than 30 days apart….Courts that have reached a different conclusion have generally done so on different facts.  For example, in *Maloney v. Alliance Collection Agencies, Inc.*, 2018 WL 5816375 (E.D. Wis. Nov. 6, 2018), a creditor sent a second validation notice to the debtor *within* 30 days of the first validation notice.  The court declined to grant the defendant judgment on the pleadings and concluded that "when receiving the second notice, an unsophisticated consumer might be confused as to how much time remains to dispute the debt."  *Id.*at *3.  Unlike the creditor in *Maloney*, in the instant case [defendant] sent the second notice approximately four months after the first notice.  Thus, the "real risk that [the creditor's] second notice could mislead an unsophisticated consumer into forfeiting her rights under the FDCPA" is wholly minimized.  *Id.* at *4.  Indeed, in this case there was no risk that [plaintiff] could be misled into forfeiting her rights under the FDCPA because the second notice came three months after the expiration of the first notice's 30-day window.

*Ortiz v. Enhanced Recovery Co., LLC*, No. 3:18-CV-1347-D, 2019 WL 2410081, at *3-4 (N.D. Tex. Jun. 6, 2019).

The FDCPA is a broad remedial statute, whose terms are to be applied in a liberal manner.  *See Schuller*, 2016 WL 427961, at *6; *Bledsoe v. Professional Finance Co., Inc.*, No. 15-1015-CV-W-ODS, 2016 WL 1267811, at *2 (W.D. Mo. Mar. 30, 2 016).   With this admonition in mind, the Court concludes that Defendant's act of sending the second letter within the initial 30-day validation period violated section 1692g of the FDCPA. [10][11]

## II.     15 U.S.C. § 1692e(5)

Plaintiff next asserts that Defendant threatened an action not intended to be taken, in violation of 15 U.S.C. § 1692e(5).  Specifically, Plaintiff claims "Defendant's statement to Plaintiff, that it would not credit report the debt until the end of the thirty day verification, while

---

[10] "Courts have held that collection letters that violate § 1692g by overshadowing and contradicting the validation language simultaneously violate § 1692e(10)'s prohibition on deceptive collection methods."  *Spira v. I.C. System, Inc.*, No. 05 CV 4367(RML), 2006 WL 2862493, at *4 (E.D. N.Y. Oct. 5, 2006) (citation omitted).
[11] The Court finds a genuine issue of material fact remains as to the amount of damages suffered by Plaintiff.

lawful in the sense that Defendant was legally allowed to credit report after thirty days, was unlawful because it violated the FDCPA § 1692e(5) prohibition on threats that are not intended to be taken, since, as the Defendant revealed, it only intended to credit report the debt on April 6, 2019, well after the expiration of the thirty day period, and in fact, Defendant never credit reported the debt."  (Plaintiff's Memorandum in Support of Motion for Summary Judgment, P. 12).

15 U.S.C. § 1692e(5) prohibits debt collectors from threatening "to take any action that cannot legally be taken or that is not intended to be taken."  "A communication to a debtor is a § 1692e(5) 'threat' if an 'unsophisticated consumer would likely be led to believe that' the debt collector would take an action." *Demarais v. Gurstel Chargo, P.A.,* 869 F.3d 685, 695 (8th Cir. 2017) (quoting *Duffy*, 215 F.3d at 875).

Upon consideration, the Court finds the unsophisticated consumer would not believe Defendant here threatened to take an action it did not intend to take.  Defendant's original communication with Plaintiff, the January 11, 2019, letter, did not mention credit reporting at all. (*See* ECF No. 30-1).  Furthermore, while Defendant's second communication on February 7, 2019, did mention credit reporting, it did not specify a date on which such reporting would occur; rather, the notice stated only that Defendant would "not submit the account information to the national credit reporting agencies until the expiration of the time period described in the notice below." (*See* ECF No. 30-2).  The fact that ICS's representative stated during the March 12, 2019, phone call that the debt was scheduled to be credit reported on April 6, 2019, confirms that Defendant intended to take the action described in the February letter.  Defendant's Motion for Summary Judgment on this claim will therefore be granted.

III.     **15 U.S.C. § 1692e(10)**

Finally, Plaintiff claims that during his March 12, 2019, phone call with Defendant, the ICS representative stated he could not discuss the Ameren debt because Defendant had another debt of Plaintiff's in its office, allegedly owed to Spectrum, and Defendant's company policy prevented the representative from discussing more than one debt at a time.  Plaintiff maintains Defendant has no such policy, and thus the statement was materially false, in violation of FDCPA § 1692e(10).  Defendant counters that the representative in fact stated he could not discuss more than one *client* at a time, a statement consistent with ICS policy.

15 U.S.C. § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  "To be actionable under this provision…a representation must be both false and material."  *Caulfield v. American Account & Advisors, Inc.*, No. 12-2761 (DSD/JJK), 2013 WL 1953314, at *2 (D. Minn. May 10, 2013) (citations omitted).  Again, the Eighth Circuit has adopted the "unsophisticated consumer" test in determining whether a debt collection practice is false, misleading or deceptive. *See Peters v. General Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002).

In relevant part, the exchange between Plaintiff and Defendant's representative transpired as follows:

ICS:        ….And I pulled up a Spectrum bill for $101.33 here, but I don't see any sort of credit reporting at this point.  Did you wanna pay that today so we can get you out of collections?

Plaintiff:      Uh.  I have a bill here saying I owe $818.93.

ICS:        Oh, yeah, I just pulled up the Spectrum one for the $101.33, so you might have something else in our office, but I can only talk about—

Plaintiff:      --Alright.

ICS:        --one at a time here.  So, did you wanna set up payment on the

$101.33 and then I can get you over to someone else for the other one?

Plaintiff:        No, not right now….I'm just trying to talk about this one bill right now.

ICS:            Oh, okay.  Yeah, like I said, I, I can only discuss one at a time.  So, I got you on the phone here, we can take care of your Spectrum bill, if you want to take care of that one here….

Plaintiff:        Yes, I was just trying to talk about this, uh, that $818.93.

ICS:            No, I understand, Robert.  I'm just, it's just, it's it's against company policy that I discuss more than one client.  So, I can take care of this—

Plaintiff:        So—

ICS:            --Spectrum one for ya, you know what I mean?

Plaintiff:        Yeah, I'm just trying to take care of this one, so how do I go about that?  Should I call back, or what?

ICS:            I mean if you wanna do that, you certainly can.  Like I said, I'm only allowed to discuss the one here, so….

In support of its Motion for Summary Judgment Defendant provides the Declaration of Michelle

Dove, General Counsel for ICS, in which she attests in relevant part as follows:

9.       ICS has an internal policy that assigns its representatives to particular clients.  The ICS system does not allow representatives on one project to view the debts on another project.  ICS representatives are limited to viewing only the client to which they are assigned.

10.      Daniel Lamb, the representative on the first March 12, 2019 phone call, was assigned to Spectrum and was therefore unable to view Plaintiff's Ameren Missouri account.

(*See* ECF No. 35-1, P. 2).

Upon consideration of the foregoing, the Court finds Plaintiff fails to establish that

Defendant's representative utilized a false representation during their discussion.  Instead,

Defendant presents undisputed evidence, in the form of testimony from Ms. Dove, that

Defendant did in fact have an internal policy prohibiting representatives from viewing client

- 13 -

accounts to which they were not assigned.  This portion of Defendant's Motion for Summary

Judgment will therefore be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No.

28) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

**IT IS FURTHER ORDERED**  that Defendant I.C. System, Inc.'s Motion for Summary

Judgment (ECF No. 33) is **GRANTED** in part and **DENIED** in part, in accordance with the

foregoing.

**IT IS FURTHER ORDERED** that the trial of this matter remains on the four-week

docket beginning December 7, 2020, and will consider only the amount of damages to which

Plaintiff is entitled.


Dated this 25th Day of June, 2020.


                                                    /s/ Jean C. Hamilton
                                                    UNITED STATES DISTRICT JUDGE